UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAURO PADILLA,<br><br>                Plaintiff,<br><br>v.<br><br>SCOTT KERNAN, et al.,<br><br>                Defendant. | Case No.: 3:16-cv-02339-BEN-PCL<br><br>**REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE:**<br><br>**MOTION TO DISMISS COMPLAINT** |

## **I. INTRODUCTION**

Before this Court are Defendants S. Posner, R. Madden, J. Denault, K. Phillips, S. Hemenway, A. Favila, M. Voong, S. Kernan, and A. Rodriguez, moving to dismiss Plaintiff's complaint filed against them on September 14, 2016. (Doc. 36.) Plaintiff, proceeding *pro se* and *in forma pauperis*, alleges the Defendants have (1) deprived his right to practice his religion fully, (2) deprived his right to be free from discrimination, (3) not afforded him procedural due process, (4) imposed a substantial burden upon him, (5) violated his right to be free from unreasonable searches and seizures, and (6) subjected him to cruel and unusual punishment. (Doc. 1 at 8.) Plaintiff alleges all of these claims arise from Centinela Prison staff rejecting his application to participate in the Jewish Kosher Diet Program ("JKDP") and the appeals resulting from such rejection. (See generally Doc. 1.)

Defendants argue Plaintiff has failed to state a claim against defendants Kernan, Favila, Madden, Hemenway, and Voong. (Doc. 36 at 2.) According to the Defendants, these five officials did not personally participate in the deprivation so as to give rise to liability under 28 U.S.C. § 1983 ("Section 1983"). (*Id*. at 3-6.) Based on this alleged failure, Defendants move to dismiss the complaint in its entirety.[1] (*Id*.)

The Honorable Roger T. Benitez referred this matter to the undersigned Judge for Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 72.1(c)(1)(d). After a thorough review of the motion, opposition, and pleadings, the Court recommends relief be GRANTED IN PART AND DENIED IN PART.

## **II. BACKGROUND**[2]

Plaintiff is currently incarcerated at Centinela State Prison ("Centinela"). Since 2006, Plaintiff has been practicing Messianic Judaism, and in doing so, has kept kosher. (Doc. 1 at 79.) Messianic Judaism is a type of Judaism in which the Jewish faith is followed while also believing Jesus Christ is the Messiah. (Doc. 1 at 43.) As a type of Judaism, Messianic Judaism requires parishioners to adhere to a kosher diet, meaning parishioners must avoid the consumption of blood, especially from meat. (*Id*. at 30.) Evidently, this type of Judaism is not recognized by Rabbis as true Judaism. (*Id*. at 58.) In 2009, Plaintiff was issued a vegetarian card in order for him to continue observing his religion by keeping kosher while incarcerated.[3] (*Id*. at 70.) However, Plaintiff later learned the vegetarian diet provided at Centinela was not prepared in a way adhering to a

---

[1] The Defendants' motion seeks to dismiss the complaint completely. (Doc. 36 at 1, "[Defendants] hereby move to dismiss Plaintiff's complaint.") However, in the points and authorities accompanying the motion, the Defendants specify they are moving to dismiss primarily the five above listed defendants (Kernan, Favila, Madden, Hemenway, and Voong). (Doc. 36-1 at 1.) Defendants only provided arguments to dismiss the five listed defendants, so this Court only discusses such and does not discuss dismissal of the complaint as a whole.

[2] The following facts are taken from Plaintiff's complaint, (Doc. 1), and are accepted as true for the purpose of this motion. *See Vasquez v. L.A. Cnty.*, 487 F.3d 1246, 1249 (9th Cir. 2007) (In ruling on a motion to dismiss, the court must "accept all material allegations of fact as true").

[3] Because a kosher diet requires no blood to be consumed, the elimination of meat is another way to adhere to such a diet. (*See* Doc. 1 at 15.)

kosher diet. (*Id.*) In April or May of 2014, Plaintiff was approved by defendant Phillips to partake in the JKDP, wherein Plaintiff would be provided with a truly kosher diet. (*Id.* at 3.) Almost one year later, in March 2015, defendant Posner, Centinela's Jewish Chaplain, requested Plaintiff submit another application to participate in the JKDP.

On March 10, 2015, Posner denied Plaintiff's application and thereby revoked Plaintiff's previously granted kosher diet. (*Id.* at 15.) In the required explanation of this denial, Posner wrote Plaintiff's "eligibility [for the program was] not substantiated," meaning Posner found Plaintiff's beliefs were not sufficient to require a kosher diet. (Id. at 24.) No other justification was provided. Eight days later, Plaintiff arrived at the food hall to pick up his meal and was informed by kitchen staff that he was no longer on the list to receive kosher meals. (*Id.* at 4.) Plaintiff departed the food hall after receiving this news and returned to his cell without taking any food. Plaintiff informed R. Solorio of the situation at that time, and told Solorio he had enough kosher food purchased from the commissary to last one week. (*Id.*) At that time, Plaintiff believed one week would be sufficient to resolve the issue. (*Id.*)

Plaintiff ran out of food one week later and began subsisting on liquids. Centinela staff began monitoring and periodically interviewing Plaintiff to ensure he was not staging a hunger strike. (*Id.* at 33-37.) During one such interview, defendant Rodriguez informed Plaintiff that Posner was only allowing those inmates who were genetically Jewish to participate in the JKDP. (*Id.* at 5.) Because Plaintiff is only religiously Jewish, and not genetically Jewish, Plaintiff concluded this was why he had been denied from the program. (*Id.*) Plaintiff also based this conclusion on Posner's additional form required to apply to the JKDP. This form requests the inmate's parents' information, including their Jewish names, synagogues, and if applicable, their burial places. (*Id.* at 17-18.)

On March 18, 2015, Plaintiff requested to be put back into the JKDP based on his faith; however, Posner rejected this request citing the lack of new information provided by Plaintiff. (*Id.* at 28.) An additional person affirmed Posner's denial, but this person did not fill in the identifying spaces in the form. This person stated Posner, as Centinela's

Jewish Chaplain, has jurisdiction to decide whether or not to allow an inmate to be in the program. (*Id*.) Upon this denial, Plaintiff began appealing the decision through the prison appeal system.

On April 7, 2015, Plaintiff's appeal was sent to the first level of review, where the appeal was denied by defendant Favila. (*Id*. at 40-41.) On June 6, 2015, the second level appeal filed by Plaintiff was denied by defendant Madden. (*Id*. at 42-43.) While appealing, Plaintiff also sent letters to the Inspector General of California and the Office of the Ombudsman for the California Department of Corrections and Rehabilitation asking for relief or advice to ultimately obtain relief. The Inspector General denied Plaintiff's request because Plaintiff had not yet exhausted his appeals in the prison appellate system. (*Id*. at 49.) The Ombudsman, however, approved of Plaintiff's pursuit of his claim, and noted Plaintiff was "correctly pursuing the resolution of [his] Religious Diet issue." (*Id*. at 50.)

Plaintiff's third level review was denied on August 17, 2015, because Plaintiff had used correction fluid or tape on his petition for review, thereby "contaminat[ing the petition] with physical/organic objects or samples." (*Id*. at 56.) Plaintiff resubmitted his petition, and on October 20, 2015, Plaintiff's third level review was denied on the merits by defendants Hemenway and Voong. (*Id*. at 57.) Following this exhaustion of the prison review system, Plaintiff resubmitted his claim to the Inspector General, where it was denied on the merits on December 3, 2015. (*Id*. at 60.)

As the prison administrative system did not provide Plaintiff with relief, Plaintiff turned to the judiciary and filed a petition for habeas corpus with the Superior Court of California on May 5, 2016. On May 18, 2016, the Superior Court requested an informal response to questions posed in Plaintiff's petition for habeas corpus. (*Id*. at 69.) The questions posed were:

1. To the extent that *In re Garcia* (2012) 202 Cal.App.4th 892 holds that denial of a Kosher meal program to a Messianic Jew is a violation of the Religious Land Use and Institutionalized Persons Act of 2000, how is it that the California Department of Corrections and Rehabilitation can

      continue to legally rely exclusively on the opinion of a Jewish Rabbi in the determination as to whether a Messianic Jew is eligible for a Kosher meal program?
2. Is it due process for an inmate seeking to have access to a Kosher meal program to go through the steps of appeal in a situation where the only question asked is whether the Rabbi agrees that the inmate is truly Jewish?
3. Is there a meaningful appeal process within the California Department of Corrections and Rehabilitation for an inmate who is denied eligibility for a Kosher meal program?
4. Is there rational basis for depriving a professing Messianic Jew incarcerated at Centinela State Prison access to a Kosher meal program?
5. Is it an accurate assessment of the duties of a Jewish chaplain at a California State Prison in the context of Kosher meal programs that said chaplain need only confirm or deny that an inmate has "Jewish heritage" as a means of determining that inmate's eligibility?

(Doc. 1 at 70-71.)

      Plaintiff also pursued his claim through administrative avenues by filing a grievance with the Victim Compensation and Government Claims Board. On May 27, 2016, this board rejected Plaintiff's claim for being filed in an untimely manner. (*Id.* at 66.)

      While the Superior Court's request for an informal response was pending, Plaintiff filed another religious diet request form to participate in the JDFP. (*Id*. at 79.) This request was approved by Phillips on June 30, 2016, and Plaintiff was accepted back into the JDFP. (*Id*.) Based on this acceptance into the JDFP, Plaintiff's petition for habeas corpus was rendered moot and denied as such. (*Id*. at 91-93.)

      Although Plaintiff has been accepted back into the JDFP, and presumably remains therein at this time, Plaintiff contends he still is owed damages. These damages are necessary to make Plaintiff whole because throughout this entire process, Plaintiff spent

5

3:16-cv-02339-BEN-PCL

over $1,600^4$ purchasing kosher food from the commissary and as a result of his limited funds, lost 39 pounds between March 26, 2015 and January 12, 2016. (Id. at 9, 115-139.) Both of these effects, according to Plaintiff, were directly caused by Centinela staff denying Plaintiff access to a kosher diet.

## III. LEGAL STANDARD

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the claims asserted in the complaint. Fed. R. Civ. P. 12(b)(6); *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). The court must accept all allegations of material fact pleaded in the complaint as true. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). The Court must also construe the allegations in favor of the nonmoving party and draw all reasonable inferences from them in favor of the nonmoving party. *Id*. To avoid a Rule 12(b)(6) dismissal, a complaint need not contain detailed factual allegations, rather, it must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id*. at 678 (quoting *Twombly*, 550 U.S. at 557) (internal quotations omitted).

"[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (alteration in original)). A court need not accept "legal conclusions"

---

[4] Plaintiff provided this amount in his complaint. (Doc. 1 at 9.) However, per the Court's calculations, the actual amount spent by Plaintiff, as provided in his receipts attached as Exhibit U was $1,404.27. (*Id.* at 95-110.)

as true. *Iqbal*, 556 U.S. at 678. "[T]o be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). Despite the deference the court must pay to the plaintiff's allegations, it is not proper for the court to assume that "the [plaintiff] can prove facts that [he or she] has not alleged or that defendants have violated the . . . laws in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

As a general rule, a court freely grants leave to amend a complaint which has been dismissed. Fed. R. Civ. P. 15(a); *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986). However, leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co.*, 806 F.2d at 1401 (citing *Bonanno v. Thomas*, 309 F.2d 320, 322 (9th Cir. 1962)). When a court dismisses a *pro se* litigant's complaint, the court must provide the plaintiff with a statement of the deficiencies in the complaint. *Karim-Panahi v. Los Angeles Police Dept.*, 839 F.2d 621, 623–624 (9th Cir. 1988).

## IV. DISCUSSION

Defendants move to dismiss Plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) based on defendants Kernan, Favila, Madden, Hemenway, and Voong only being sued in their roles as supervisors and inmate-appeal reviewers. (Doc. 36-1 at 1.) Defendants claim "[a]llegations based solely on those roles fail to state a claim for a constitutional violation." (*Id*.)

Plaintiff argues each of the five above named defendants is appropriately included in this suit because each defendant contributed to Plaintiff's constitutional injury in some way. Specifically, Plaintiff contends Kernan, as the Secretary of the California Department of Corrections and Rehabilitation, has the ongoing duty to train the Centinela

7

staff. (Doc. 41 at 4.) Because the Centinela staff violated Plaintiff's constitutional rights, Kernan must have failed to conduct such proper training. Favila, the Chief Deputy Warden of Centinela, reviewed Plaintiff's initial inmate grievance form. (*Id.*) Plaintiff argues Favila conducting this review put Favila on notice of the constitutional violation, which gave rise to an affirmative duty to remedy the violation. (*Id.*) Favila's failure to do so was a failure to act sufficient to create Section 1983 liability. (*Id.*) Madden, the Warden of Centinela, served as the second level of review for Plaintiff's inmate grievance. Because Madden reviewed the appeal in the same way Favila did, Plaintiff contends Madden is liable in the same way as Favila. (Id. at 5.) Finally, Hemenway and Voong serve as appeals officers who reviewed Plaintiff's grievance at the third and final level. Plaintiff contends Hemenway and Voong are also liable based on their being put on notice and failing to act to remedy the constitutional violation. (*Id.*)

### A. Personal Participation Requirement for Section 1983 Liability

To state a claim under Section 1983, a plaintiff must allege two essential elements: (1) the violation of a right secured by the Constitution and laws of the United States; and (2) that the alleged deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). A plaintiff must show a specific constitutional guarantee safeguarding the interests that have been invaded. *See Paul v. Davis*, 424 U.S. 693 (1976). An individual government defendant "causes" a constitutional deprivation when he or she (1) "does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he [or she] is legally required to do that causes the deprivation"; or (2) "set[s] in motion a series of acts by others which the [defendant] knows or reasonably should know would cause others to inflict the constitutional injury." *Johnson v. Duffy*, 588 F.2d 740, 743-44 (9th Cir. 1978) (citations omitted); *see also Lacey v. Maricopa County*, 693 F.3d 896, 915 (9th Cir. 2012) (en banc) (same) (citing *id.*). Allegations regarding causation "must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or

omissions are alleged to have caused a constitutional deprivation." *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988) (citations omitted).

Similarly, a government official acting in a supervisory capacity may be held individually liable under Section 1983 if the supervisor's own misconduct caused a constitutional deprivation. *OSU Student Alliance v. Ray*, 699 F.3d 1053, 1069 (citing *Iqbal*, 556 U.S. at 676); *see also Starr*, 652 F.3d at 1207 ("We have long permitted plaintiffs to hold supervisors individually liable in [Section] 1983 suits when culpable action, or inaction, is directly attributed to them."), *cert. denied*, 566 U.S. 982 (2012). More specifically, a supervisor "causes" a constitutional deprivation if he (1) personally participates in or directs a subordinate's constitutional violation; or (2) the constitutional deprivation can otherwise be "directly attributed" to the supervisor's own culpable action or inaction, even though the supervisor was not "physically present when the [plaintiff's] injury occurred." *See Starr*, 652 F.3d at 1206-07; *see also Crowley v. Bannister*, 734 F.3d 967, 977 (9th Cir. 2013) (supervisor may be held liable under Section 1983 only if there is "a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation") (citations and internal quotation marks omitted).

Further, "a supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations or knew of the violations and failed to act to prevent them." A supervisor is not liable under Section 1983 solely for the acts of another because "there is no *respondeat superior* liability under [S]ection 1983." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) *citing Ybarra v. Reno Thunderbird Mobile Home Village*, 723 F.2d 675, 680-81 (9th Cir. 1984).

**B. Secretary Kernan**

Plaintiff alleges Kernan is liable for Plaintiff's constitutional injuries because Kernan "is responsible for the effective management of all facets of the correctional system for all inmates, wards, and parolees to include custody, care, treatment, discipline, training, rehabilitation, and employment." (Doc. 1 at 2.) Given Kernan's responsibility to train those who are employed at all California prisons, Kernan's alleged failure to

9

3:16-cv-02339-BEN-PCL

properly train those employed at Centinela is, according to Plaintiff, sufficient to make Kernan liable under Section 1983. Plaintiff's argument is not persuasive.

To the extent Plaintiff is claiming that Kernan has supervisory liability, such a claim is unsupported. "For an official to be liable for another actor's depriving a third party of his constitutional rights, that official must have at least the same level of intent as would be required if the official were directly to deprive the third party of his constitutional rights." *Lacey*, 693 F.3d at 916. "[A] plaintiff may state a claim against a supervisor for deliberate indifference based upon the supervisor's knowledge of and acquiescence in unconstitutional conduct by his or her subordinates." *Starr*, 652 F.3d at 1206-07. In such circumstances, the supervisor is liable because of his or her own actions or inactions, not for the actions of his or her subordinate. *See id*.

Plaintiff has presented no facts to indicate Kernan personally participated in or directed Plaintiff's constitutional violation. Kernan was not involved in the revocation of Plaintiff's kosher meals, nor was Kernan involved in the grievance process that followed such revocation. Instead, Plaintiff alleges Kernan is liable based solely on a failure to properly train subordinates. Plaintiff, however, offers no explanation as to how this alleged failure to train would put Kernan on notice of Plaintiff's specific constitutional violation. Without such notice, Kernan did not have a duty to act to remedy the injury, and therefore could not have failed to act. Thus, regardless of the truth of Plaintiff's failure to train allegation, this claim is conclusory as Plaintiff offers no explanation or supporting facts. To survive a motion to dismiss, Plaintiff may not rely on merely conclusory statements. *Iqbal*, 556 U.S. at 678. Accordingly, Defendants' motion to dismiss is GRANTED as to defendant Kernan.

### C. Warden Madden, Chief Deputy Warden Favila, and Appeals Officers Voong and Hemenway

Defendant Madden is the Warden of Centinela. (Doc. 1 at 2.) Plaintiff alleges Madden is liable for the constitutional violation he suffered because Madden "is legally responsible for the operation of Centinela, and [is] responsible for the welfare of all

10

3:16-cv-02339-BEN-PCL

inmates in that prison." (*Id*.) Based on Madden's duty to ensure the inmates' welfare, Plaintiff alleges Madden is liable for his constitutional injuries, which Madden was made aware of through Plaintiff's grievance. Defendant Favila is the Chief Deputy Warden of Centinela. (*Id*.) Plaintiff alleges Favila is liable for Plaintiff's constitutional injuries for the same reason Madden is liable for Plaintiff's injuries. (*Id*.)

Defendants Voong and Hemenway deal exclusively with appeals within the California Department of Corrections and Rehabilitation. (*Id*.) Plaintiff contends these defendants are liable for his constitutional injury because Voong, as Chief Office of Appeals Supervisor, screened his third level appeal and Hemenway, as the Appeals Examiner, rejected Plaintiff's appeal at the third level. Both Voong and Hemenway were on notice of the constitutional violation based on their respective actions taken regarding Plaintiff's appeal. Plaintiff's claims against Voong and Hemenway are based on their roles in reviewing Plaintiff's appeals at the Third Level.

Generally, denying a prisoner's administrative appeal does not cause or contribute to the underlying violation. *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007) (quotation marks omitted). *See Revis v. Syerson*, 2015 U.S. Dist. LEXIS 17532, at *5 (E.D. Cal. 2015); *Hernandez v. Cate*, 918 F.Supp.2d 987, 1018 (C.D. Cal.2013) ("Plaintiff cannot state a Section 1983 claim based solely on [defendants'] role in the inmate appeals process."); *Lamon v. Junious*, 2009 U.S. Dist. LEXIS 97003, *4 (E.D. Cal. 2009) ("[T]he involvement of prison personnel in reviewing and issuing decisions on Plaintiff's inmate appeals does not provide a basis for the imposition of liability on them for the conduct of others."); *Reed v. Brackbill*, 2008 U.S. Dist. LEXIS 82345 (D. Nev. July 2, 2008) (defendant found to have personally participated by reviewing and signing various grievances filed by plaintiff thereby allowing constitutional violations to continue).

While there are limited circumstances where reviewing an appeal may lead to liability, such liability remains based on personal participation. In order to show personal participation sufficient to give rise to 1983 liability, Plaintiff must show these defendants were on notice of the alleged constitutional violations and failed to correct them, thereby

showing the defendants to have contributed to the violations. *Cook v. Cate*, 2014 U.S. Dist. LEXIS 113135, *25 (N.D. Cal. Aug. 14, 2014). In other words, personal participation in the alleged violation is required, meaning that defendants Madden, Favila, Voong, and Hemenway, in their roles as appeal reviewers, must have known of the violations and failed to act. Plaintiff has shown this.

Here, Plaintiff alleges defendants Madden, Favila, Voong, and Hemenway are all liable for their respective denials of Plaintiff's grievances and appeals. Each of these defendants reviewed Plaintiff's grievance at some level, and rejected the grievance. Plaintiff alleges because each of these defendants was aware of the facts showing an alleged constitutional violation, each of these defendants failed to take remedial action as required, therefore giving rise to Section 1983 liability.

Specifically, in Plaintiff's first level appeal, reviewed by Favila, Plaintiff specifically states "this situation is a violation of the First [A]mendment – Freedom of Religion . . . ." (Doc. 1 at 41.) In Plaintiff's second level appeal, reviewed by Madden, Plaintiff included additional legal authority regarding his claim that his First Amendment rights had been violated. (*Id*. at 42.) In Plaintiff's third level appeal, reviewed by Hemenway and Voong, Hemenway and Voong specifically note Plaintiff argued his denial from the JKDP was a violation of Plaintiff's religious rights. (*Id*. at 57.) Thus, at each level of review, Plaintiff made his constitutional claim explicitly clear to the reviewer.

Presumably, the reviewers at each level of appeal conducted personal reviews of the appeals before drafting a letter either granting or rejecting the appeal. This personal review of the appeal amounts to personal participation in the Plaintiff's alleged constitutional injury because by conducting a review of Plaintiff's claims, which clearly articulated the constitutional violations, each reviewer was adequately put on notice of the allegations and failed to act in order to remedy such. Therefore, these defendants' failure to act caused Plaintiff to further suffer the alleged violation. *Cook*, 2014 U.S. Dist. LEXIS 113135, *25. Had these reviews recognized the constitutional violations as such,

any of these four defendants could have sufficiently remedied Plaintiff's injuries. However, no defendant took such action. This failure to take action fulfills the requirement for Section 1983 liability to arise by knowing of a constitutional violation and failing to provide a remedy thereto.

Accordingly, Plaintiff has shown sufficient personal participation giving rise to Section 1983 liability for defendants Madden, Favila, Hemenway, and Voong. Defendants' motion to dismiss is therefore DENIED regarding these four defendants.

## V. CONCLUSION

This Report and Recommendation is submitted to the Honorable Roger T. Benitez, United States District Judge, pursuant to 28 U.S.C. § 636(b)(1) and Local Civil Rule 72.1(c)(1)(c) of the United States District Court for the Southern District of California. For the reasons outlined above, **IT IS HEREBY RECOMMENDED** that the Court issue an Order: (1) approving and adopting this Report and Recommendation, and (2) directing that Judgment be entered **GRANTING IN PART AND DENYING IN PART** the Defendants' Motion to Dismiss Complaint.

Any party may file written objections with the Court and serve a copy on all parties on or before **January 22, 2018**. The document should be captioned "Objections to Report and Recommendation." Any reply to the Objections shall be served and filed on or before **February 5, 2018**. The parties are advised that failure to file objections within the specific time may waive the right to appeal the district court's order. *Ylst*, 951 F.2d at 1157 (9th Cir. 1991).

IT IS SO ORDERED.

Dated: January 8, 2018

Hon. Peter C. Lewis
United States Magistrate Judge

13

3:16-cv-02339-BEN-PCL